UNITED STATES of America

v.

Brian WHITCOMB.

UNITED STATES of America

v.

Daniel HARTMAN.

UNITED STATES of America

v.

Michelle ROUTHIER.

Criminal Nos. 1:97CR10–1, 1:97CR11–01, 1:97CR11–02.

United States District Court,
D. Vermont.

June 12, 1997.

John M. Conroy, Assistant U.S. Attorney, Burlington, VT, for U.S.

David R. Cowles, Bristol, VT, for Brian Whitcomb.

Gregory W. McNaughton, Barre, VT, for Daniel Hartmann.

David J. Mullett, Montpelier, VT, for Michelle Routhier.

## RULING ON PENDING PRETRIAL MOTIONS

MURTHA, Chief Judge.

Defendant Brian Whitcomb has been indicted on two counts of possession of cocaine with intent to distribute. Similarly, defendants Daniel Hartman and Michelle Routhier have been charged in a three count indict-

ment with charges related to their possession of cocaine.

In the case *United States v. Whitcomb*, Crim. No. 1:97CR10–01, the defendant has filed a Motion to Suppress Evidence (paper 10), a Motion to Suppress Statements (paper 11), and a Motion to Challenge Search Warrants (paper 12). In *United States v. Hartman*, Crim. No. 1:97CR11–01, the defendant has filed several Motions to Suppress (papers 15, 17, 18, 19 and 36). In *United States v. Routhier*, Crim. No. 1:97CR11–02, the defendant has filed a Motion to Challenge Search Warrants (paper 24) and a Motion to Suppress Evidence (paper 26).

These actions have not been consolidated formally. However, the aforementioned motions contain overlapping allegations. In some of these motions, the defendants claim that certain statements and evidence are the fruits of warrants which were not supported by probable cause. Moreover, each of these cases involves the same informant and some of the same police officers, and otherwise are related to an alleged course of conduct involving drug activity.

On May 14, 1997, the Court held an evidentiary hearing on the aforementioned motions. For the reasons set forth below, all pending motions are DENIED.

### I.   Background

The Court finds the following course of events relevant to understanding and solely for the purpose of deciding the pending motions.

In November 1991, Suzanne Upmal was romantically involved with Brian Whitcomb. As a result of Whitcomb's 1991 arrest, Upmal testified as to her knowledge of Whitcomb's drug use and dealing before a federal grand jury in Burlington, Vermont on December 5, 1991.

Thomas Kelly has been employed as a Deputy State's Attorney in Washington County since March 1987. In 1991, he worked as part of the Northern Vermont Drug Task Force. As a member of the task force, he also was a specially-assigned Assistant United States Attorney, thereby permitting him to question witnesses in federal grand jury proceedings. Attorney Kelly questioned Upmal before the grand jury on December 5, 1991.

Upmal testified that she was Whitcomb's girlfriend and had received cocaine from him on at least one occasion. These admissions arguably substantiated Upmal's claim of knowledge concerning Whitcomb's alleged drug trafficking activities.

On October 22, 1993, Vermont State Trooper David Lay was operating radar in East Montpelier when he stopped a 1966 Buick Wildcat driven by Michelle Routhier for traveling 58 miles per hour in a 50 mile per hour zone. Daniel Hartman and Brian Whitcomb were two of three passengers in the vehicle.

When speaking with Routhier, Trooper Lay detected the odor of intoxicants. He also observed a liquor bottle on the back seat area. When Trooper Lay noticed Whitcomb in the vehicle, he remembered that he had arrested Whitcomb for driving while intoxicated and cocaine possession on April 10, 1993.

After observing Routhier's performance on several dexterity tests and administering an alco-sensor test, Lay arrested Routhier for driving while intoxicated. Thereafter, he asked the remaining passengers to exit the vehicle. Lay searched the vehicle incident to the arrest and uncovered a cooler with alcohol bottles and a purse with a wallet and a dollar bill rolled-up in such a manner as to facilitate the use of cocaine. Lay unrolled the dollar bill and noticed white flakes. The rolled dollar bill, together with his knowledge of Whitcomb's previous arrest and the "wired" behavior of all the defendants, led Trooper Lay to conclude the vehicle's occupants were using cocaine. Accordingly, the defendants were arrested for possession of cocaine.

Routhier refused consent to a further search of the Buick Wildcat. On October 22, 1993, Vermont District Court Judge Alan Cheever approved a search warrant application. Pursuant to that search, police found cocaine in the vehicle.

From October 1993 until the present, Vermont State Trooper Robert Evans has been

involved in the investigation of Brian Whitcomb's alleged drug trafficking activities. At all relevant times, his assisting prosecutorial attorney on the investigation was Deputy State's Attorney Kelly.

On January 10, 1996, Trooper Evans first met Suzanne Upmal when he responded to a domestic violence dispute in East Montpelier involving Upmal and Brian Whitcomb. At that time, Evans spoke with Upmal about the domestic assault and about Brian Whitcomb's drug-related activities.

On January 17, 1996, Trooper Evans interviewed Upmal concerning Brian Whitcomb's alleged drug-trafficking activities. He used the information she supplied as part of the basis for obtaining a search warrant authorized by Vermont District Judge David Suntag on January 21, 1996.

On January 25, 1996, Vermont State Police executed the warrant authorizing the search of Brian Whitcomb's person, motor vehicle and residence. As a result of the search, police discovered cocaine in Whitcomb's vehicle.

On March 21, 1996, Trooper Evans obtained from Judge Suntag and executed search warrants pertaining to all three defendants at 23 Brook Street in Barre, Vermont. Again, the affidavits supporting the warrant applications contained information supplied by Suzanne Upmal. During the execution of the warrants, police went to Whitcomb's residence and discovered a quantity of cocaine and $7000 in cash.

On March 22, 1996, following the search of 23 Brook Street, Barre, Vermont, Vermont State Police took Brian Whitcomb into custody and transported him to the Vermont State Police barracks in Middlesex. Trooper Evans advised the defendant of his *Miranda* rights, and when Whitcomb refused to answer any questions, police released him. At about noon, Whitcomb began to walk back to Barre.

After releasing Whitcomb, Trooper Evans called Detective David Nease, who also was assigned to the Northern Vermont Drug Task Force as an undercover agent. Evans felt police may not have seized all the cocaine under Whitcomb's control and therefore was interested in finding out where Whitcomb would go after his release. Evans told Nease that Whitcomb was walking toward the interstate and asked Nease to follow him.

At the time, Nease was driving an unmarked car. He was accompanied by Vermont State Police Detective Patrick Devenger. Both were working undercover that day. While Nease and Devenger were traveling north on the interstate, they observed Whitcomb walking south. The officers turned around and, when they saw Whitcomb hitchhiking, decided to pick him up.

At no time did the officers identify themselves as police officers. Nease asked Whitcomb why he was hitchhiking. Whitcomb responded that his vehicle had broken down. Thereafter, all conversation between the officers and Whitcomb was initiated by Whitcomb. Eventually, Whitcomb volunteered that he had just left the police barracks and that he had lost some cocaine and $7000 in his girlfriend's cash. In response, Nease told a false story about his own recent "arrest" and loss of money. Nease eventually drove Whitcomb to Brook Street in Barre. At no time during the ride was Whitcomb restrained or given an indication that he was not free to leave.

The defendants have challenged, *inter alia*, all warrants for which Suzanne Upmal's statements and affidavits supplied probable cause. The gravamen of the defendants' argument is that Deputy State's Attorney Kelly and Trooper Evans knew that Upmal had lied during her 1991 grand jury testimony.

Upon consideration of the testimony tendered in this Court on May 14, 1997, and upon review of the transcript of the 1991 grand jury proceedings, the Court concludes that Upmal's testimony was substantially and materially truthful. While information Upmal eventually provided during a December 1996 deposition taken in conjunction with the instant criminal proceedings was more complete in some respects, that fact does not render her 1991 testimony untruthful.

In fact, the only untruth which the defendants have highlighted concerns Ms. Upmal's assertion that Whitcomb had a job in 1991 when he in fact did not. Viewed in context,

this statement was immaterial, and the reason Upmal made the statement is understandable. The Court credits Ms. Upmal's explanation that Whitcomb asked her to tell the grand jury that he had a job, and she was afraid to do otherwise. Furthermore, Ms. Upmal's conclusion, stated during her December 1996 deposition, that she committed "perjury" in 1991 when she asserted Whitcomb was employed is not dispositive of any issue presently before the Court.

Furthermore, when assisting Trooper Evans in preparing the affidavits, Kelly knew that Evans' informant was Ms. Upmal but, at the time, he did not remember her from the 1991 grand jury. Similarly, Evans did not know that Upmal had testified before a grand jury in 1991. Evans first learned Upmal had testified before a grand jury in 1991 when, in conjunction with these criminal prosecutions, Susan Upmal's deposition was taken on September 5, 1996.

## II. Discussion

### A. Violations of State Law

*Motion to Suppress Evidence (paper 10), No. 1:97CR10–01; Motions to Suppress (papers 15 and 17). No. 1:97CR11–01; Motion to Suppress Evidence (paper 26), No. 1:97CR11–02*

Defendant Whitcomb moves to suppress evidence seized as a result of the search warrant executed on January 25, 1996. Likewise, defendants Hartman and Routhier moves to suppress evidence obtained during the search of her vehicle conducted on October 22, 1993.

■ The basis of these motions is that the search warrants were obtained in violation of Vermont law. In a federal prosecution, federal law applies. Accordingly, the alleged violation of state law, in and of itself, does not provide a basis for suppressing the evidence seized. *See United States v. Pforzheimer*, 826 F.2d 200, 204 (2d Cir.1987) ("[F]ederal law should apply to this federal criminal prosecution, even though the underlying investigation leading to the prosecution was conducted solely by state officials.") Having identified no violation of federal law, the defendants' motions must be denied.

### B. Sixth Amendment Violation

*Motion to Suppress (paper 11), No. 1:97CR10–01*

■ Defendant Whitcomb seeks to suppress statements he made to Detectives Nease and Devenger after they offered him a ride to Barre on March 22, 1996. He asserts the officers illegally questioned him after he had refused to waive his *Miranda* rights at the police barracks. Since Mr. Whitcomb voluntarily accepted the ride, and he was not otherwise subject to custodial interrogation, Nease was not required to again provide Whitcomb with a *Miranda* warning. *See United States v. Mitchell*, 966 F.2d 92, 98 (2d Cir.1992).

■ Whitcomb further asserts police obtained information from him in violation of his Sixth Amendment right to have counsel present during questioning. The basis of this argument is that, on March 22, 1996, police knew or should have known that Whitcomb had retained the service of counsel in conjunction with his January 11, 1996 arraignment on charges of domestic assault and unlawful mischief involving his former girlfriend Suzanne Upmal. However, the Sixth Amendment right to counsel is "offense specific" and "cannot be invoked once for all future prosecutions, for it does not attach until a prosecution is commenced." *McNeil v. Wisconsin*, 501 U.S. 171, 175, 111 S.Ct. 2204, 2207, 115 L.Ed.2d 158 (1991); *see Alexander v. Connecticut*, 917 F.2d 747, 751 n. 2 (2d Cir.1990), *cert. denied*, 501 U.S. 1219, 111 S.Ct. 2831, 115 L.Ed.2d 1000 (1991). At the time Whitcomb accepted the ride, the current drug charges were not pending against him. Accordingly, his Sixth Amendment right was not violated.

### C. Franks Issues

*Motion to Challenge Search Warrants (paper 12). No. 1:97CR10–01; Motion to Suppress (paper 18), No. 1:97CR11–01; Motion to Suppress Evidence (paper 19). No. 1:97CR11–01; Supplemental Motion To Suppress (paper 36), No. 1:97CR11–01; Motion to Challenge Search Warrants (paper 24). No. 1:97CR11–02*

In the above cited motions, the gravamen of the defendants' complaints is that, in se-

cr..ring the March 21, 1996 warrants authorized by Judge David Suntag, Trooper Evans and Deputy State's Attorney Kelly knowingly relied on the statements of Suzanne Upmal, an individual whom the defendants allege committed perjury before a United States Grand Jury.

As the Supreme Court in *Franks v. Delaware*, 438 U.S. 154, 171–72, 98 S.Ct. 2674, 2684–85, 57 L.Ed.2d 667 (1978), has counseled:

> There is . . . a presumption of validity with respect to the affidavit supporting the search warrant. To mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine. There must allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. . . . The deliberate falsity or reckless disregard whose impeachment is permitted today is only that of the affiant, not of any nongovernmental informant. Finally, if these requirements are met, and if, when material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause, no hearing is required. (footnote omitted).

■ In the instant case, the defendants have not met their burden of demonstrating by a preponderance of the evidence that the items seized must be suppressed. *See id.* at 156, 98 S.Ct. at 2676–77. To the extent that the defendants are arguing that Suzanne Upmal provided inaccurate information, that fact, in and of itself, does not make the search warrants at issue invalid. "The rule in this circuit is that as long as the applicant for the warrant accurately represents the information provided by an informant, probable cause is not defeated because the informant erred, or even lied, in his description of events." *United States v. Smith*, 9 F.3d 1007, 1014 (2d Cir.1993). The defendants have presented no evidence that the police-affiants lied in recounting information provided by Upmal.

■ Moreover, the defendants have not demonstrated that either Trooper Evans or Deputy State's Attorney Kelly displayed a reckless disregard for the truth when securing the warrants based upon information supplied by Suzanne Upmal. "A *Franks* violation occurs only if the affiant knew the third party was lying, or if the affiant proceeded in reckless disregard of the truth." *United States v. McAllister*, 18 F.3d 1412, 1417 (7th Cir.1994). Here, the record is devoid of evidence Upmal was untruthful in relating information about Whitcomb's drug-related activities. *See Smith*, 9 F.3d at 1014 ("There is no claim that the CI deliberately lied about these matters, and it cannot plausibly be contended that these minor errors or inconsistencies undermine the existence of probable cause.") Because Upmal's 1991 testimony regarding Whitcomb's employment status was an immaterial misstatement, inclusion of that information would not have defeated the probable cause otherwise evident in the search warrant affidavits. *See, e.g., United States v. LaMorie*, 100 F.3d 547, 555 (8th Cir.1996); *United States v. Colkley*, 899 F.2d 297, 301 (4th Cir.1990). Moreover, the defendants have failed to demonstrate that the misstatement from 1991 in any way impugns the apparent accuracy of the particular information Upmal has more recently supplied.

In addition, Kelly, an attorney who has handled many grand jury proceedings since 1991, testified that he did not remember Upmal's 1991 testimony at the time he helped Trooper Evans prepare the search warrants at issue. Furthermore, Trooper Evans knew nothing of Ms. Upmal's prior testimony at the time he prepared the warrant affidavit. Accordingly, the record is utterly devoid of evidence that either Kelly or Evans intentionally relied upon information they knew to be false.

Finally, to the extent the defendants challenge the October 22, 1993 search warrants authorized by Judge Cheever, those motions to suppress likewise are denied. The record shows the initial stop of the 1966 Buick Wildcat was made as a result of an observed traffic violation. The initial search of the vehicle was conducted incident to Routhier's

arrest, and the defendants have failed to demonstrate any other impropriety in conjunction with Trooper Lay's application for the warrant later issued by Judge Cheever. *See generally California v. Acevedo*, 500 U.S. 565, 111 S.Ct. 1982, 114 L.Ed.2d 619 (1991).

### III. Conclusion

All pending motions (in No. 1:97CR10–01, papers 10, 11 and 12; in No. 1:97CR11–01, papers 15, 17, 18, 19 and 36; in No. 1:97CR11–02, papers 24 and 26) are DENIED.

SO ORDERED.